

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MILTON CLIFTON WILLIAMS,

    Petitioner,

v.

    Civil Action No. **3:08CV331**

GENE M. JOHNSON,

    Respondent.

## MEMORANDUM OPINION

Petitioner brings this petition for a writ of habeas corpus challenging his convictions in the Circuit Court for the City of Hopewell ("Circuit Court"), for felon in a possession of a firearm, malicious wounding, attempted murder, and two counts of use of a firearm during the commission of felony. Petitioner contends that he is entitled to relief on the following grounds:

| | |
|---|---|
| Claim One | Petitioner was denied effective assistance of counsel by counsel's failure to call Mary Harmon as a witness. |
| Claim Two | Petitioner's trial counsel was constitutionally ineffective because he did not alert the jury that the police had failed to find the firing pin to the gun. |
| Claim Three | The trial court erred and violated the Double Jeopardy Clause when it convicted Petitioner of both malicious wounding and attempted murder. |
| Claim Four | The evidence was insufficient to prove that Petitioner was the individual who attacked Ms. Avery. |

Respondent contends that Claim Three and Four are defaulted and Petitioner's remaining claims lack merit.

## I. PROCEDURAL HISTORY

The Circuit Court entered final judgment on Petitioner's convictions and sentences on April 28, 2006. Petitioner then appealed his convictions to the Supreme Court of Virginia and raised Claims One and Two. On May 16, 2007, the Supreme Court of Virginia refused Petitioner's appeal. Petitioner did not thereafter file a state petition for a writ of habeas corpus.

## II. EXHAUSTION AND PROCEDURAL DEFAULT

"In the interest of giving the state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing, a state prisoner must exhaust all available state remedies before he can apply for federal habeas relief." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (*citing Matthews v. Evatt*, 105 F.3d 907, 910-11 (4th Cir. 1997)). "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court." *Matthews*, 105 F.3d at 911 (*citing Spencer v. Murray*, 18 F.3d 237, 239 (4th Cir. 1994)).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard*, 134 F.3d at 619. This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (*citing Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). Furthermore, a federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (*quoting Coleman*,

2

501 U.S. at 735 n.1). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court is precluded from reviewing the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

Petitioner never presented Claims One and Two to the Supreme Court of Virginia. If Petitioner were to now attempt to present Claims One and Two to the Supreme Court of Virginia, that court would find the claims barred under section 8.01-654(A)(2) of the Virginia Code. That statute provides, in pertinent part, that "[a] habeas corpus petition attacking a criminal conviction or sentence . . . shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later." Va. Code Ann. § 8.01-654(A)(2) (West 2008).[1] This statute of limitations constitutes an adequate and independent state procedural rule. *See Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 587-88 (E.D. Va. 2006). Thus, Claims One and Two are defaulted. Petitioner fails to demonstrate any basis for excusing his default. Claims One and Two will be DISMISSED.

### III. PURPORTED DOUBLE JEOPARDY VIOLATION

Petitioner contends that his convictions for both malicious wounding and attempted murder violates the Double Jeopardy clause. The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. In addition to prohibiting a second prosecution for the same offense after acquittal and a second prosecution after conviction, the Double Jeopardy Clause "protects against

---

[1] As previously noted, final judgment was imposed by the Circuit Court on April 28, 2006, and Petitioner's direct appeal concluded on May 16, 2007. Thus, Petitioner had to file any state petition for a writ of habeas corpus by May 16, 2008.

multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds, Alabama v. Smith*, 490 U.S. 794 (1989). In the multiple punishments context, the interest that the Double Jeopardy Clause "is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (citing cases).

The "test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932)." *Id.* at 166. "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not . . ." *Blockburger*, 284 U.S. at 304 (*citing Gavieres v. United States*, 220 U.S. 338, 342 (1911)). Nevertheless, the *Blockburger* test "is not a constitutional test in and of itself. Rather, it is simply a means of evaluating legislative intent." *McCloud v. Deppisch*, 409 F.3d 869, 875 (7th Cir. 2005) (*citing Albernaz v. United States*, 450 U.S. 333, 340 (1981); *Whalen v. United States*, 445 U.S. 684, 691 (1980)). Once the Virginia courts have concluded that the legislature intended cumulative punishment for malicious wounding and attempted murder, this federal habeas court is bound by that conclusion. *See id.* at 874-75; *Banner v. Davis*, 886 F.2d 777, 782 (6th Cir. 1989) ("Contrary to [the petitioner's] assertion, then, we may not use the *Blockburger* test-a rule of statutory construction for federal statutes-to independently evaluate the scope of the Tennessee statute here, the Tennessee Court of Criminal Appeals and Supreme Court having already held that the legislature intended cumulative punishments."); *see also Ohio v. Johnson*, 467 U.S. 493, 499 (1984) ("We accept, as

we must, the Ohio Supreme Court's determination that the Ohio legislature did not intend cumulative punishment for the two pairs of crimes involved here.")

The Virginia courts have concluded that the Virginia legislature intended cumulative punishment for attempted murder and malicious wounding. *See Coleman v. Commonwealth*, 539 S.E.2d 732, 734-35 (Va. 2001). After applying the *Blockburger* test Virginia Supreme Court concluded that crimes of attempted murder and malicious wounding each require proof of an additional fact which the other does not. *Id.* at 734. "[A]n attempted murder charge does not require the element that 'the defendant shot, stabbed, cut, or wounded the victim' necessary for a malicious wounding conviction; and 'that a malicious wounding charge does not require the element of a specific intent to kill as required in an attempted murder charge.'" *Williams v. Commonwealth*, No. 1126-06-2, at 2 (Va. Ct. App. Dec. 20, 2006) (*quoting Coleman*, 539 S.E.2d at 734, 735). Thus, Petitioner fails to demonstrate that his rights under the Double Jeopardy Clause were violated. Claim Three will be DISMISSED.

## IV. SUFFICIENCY OF THE EVIDENCE

Petitioner contends that the evidence was insufficient to demonstrate that he was the individual who had assaulted Joan Avery. A federal habeas petitioner is entitled to relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The Court of Appeals of Virginia aptly summarized the evidence at trial as follows:[2]

> Just prior to leaving work on April 27, 2005, Joan Avery received a phone call from a man she recognized as appellant. Avery had known appellant since 2001 and had been romantically

---

[2] Petitioner is referred to as the "appellant" in opinion of the Virginia Court of Appeals.

involved with him. Appellant said, "I'm going to get your ass." Avery's co-worker, Sharon Brown, "recognized the voice" of the caller as the man who had repeatedly called Avery. When Avery left work around 11:00 p.m., she was attacked by a man with a firearm. She had just sat down in her car when her car "door swung open." She "looked up and it was Milton Williams." He told her to "slide over" and began "trying to shove" her over, but she held onto the steering wheel. He then started beating her hand with an object to make her let go of the steering wheel. During the struggle, he dropped the object on the pavement outside of the car. It made a "metal sound" as it hit the ground. Avery testified, "Then I realized it was a gun. He put it to my head like that, and I could see that it was. And he clicked it three times. I heard the click of that gun three times to my temple of my head."

When the gun failed to fire, "He got furious, like he was very upset because it didn't go off." Appellant then started beating her in the head with the gun. Sheila, a fellow employee, was getting into her car at the other side of parking lot. She heard "cursing and swearing" but didn't know what it was because a company van blocked the view to Avery's car. As Sheila began driving in their direction, Avery testified that appellant "took off running" toward the tree line behind a nearby Food Lion store. Avery then got out of the car and started toward the building, wiping blood off her face so she could see where she was going.

As Sheila drove up, she noticed a woman "running across the parking lot, and she was running up and down in the front like she was really hysterical." As she got closer, she barely recognized Avery. There was "blood all in her face, and there was blood all down the back of her head. She was bleeding very badly." Sheila and Avery reentered the building for safety. Sharon Brown saw Avery as she entered. Brown testified that "blood was just coming from [Avery's] face" and her shirt was ripped off. Avery then told her: "Sharon, he got me."

Before being transported to the hospital, Avery told the police appellant was her assailant. Avery received twenty-seven stitches in her head, and her ring finger was fractured and required surgery. She also received injuries to her left wrist and elbow.

The following morning, another employee found a metal "pin" right under the driver's side door of Avery's car. John Willmer, a firearm and tool mark expert, testified at trial that the pin was "consistent with being a center pin of a revolver, a firearm, a cylinder pin as it's normally called." It "most closely represents a cylinder pin contained in our reference collection from the brand

> RG Industries Model RG 14S Caliber .22 long rifle, double action revolver." He further testified that if the pin were to fall out, the cylinder would often "misalign itself" resulting in a "very good chance of misfires, because the firing pin as it falls will not properly line up with the head of the cartridge and would not be ignited by the firing pin." The revolver would, however, "still make a clicking sound."

*Williams v. Commonwealth*, No. 1126-06-2, at 3-5 (Va. Ct. App. Dec. 20, 2006).[3] Considered in the light most favorable to the Commonwealth, the evidence amply supported the conclusion that Petitioner had perpetrated the assault upon Avery. *See United States v. Habegger*, 370 F.3d 441, 444 (4th Cir. 2004) (The finder of fact "not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the [finder of fact] decides which interpretation to believe.'" (*quoting United States v. Murphy*, 35 F.3d 143, 148 (4th Cir.1994))). Claim Four will be DISMISSED. The motion to dismiss (Docket No. 9) will be GRANTED. The petition for a writ of habeas corpus will be DENIED. The action will be DISMISSED.

An appropriate Order shall issue.

Dated: **JAN 1 6 2009**
Richmond, Virginia

/s/
Richard L. Williams
United States District Judge

---

[3] Petitioner denied attacking Avery and swore that he was home asleep at the time of the assault.